**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Lannon,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-16-00052-PHX-DLR<br><br>**ORDER** |

Plaintiff Cynthia Lannon applied for disability benefits and supplemental security income in July 2012, claiming to be disabled since May 25, 2010. (AR 205-15.) The applications were denied. (AR 81-82, 140-54.) A hearing before an Administrative Law Judge (ALJ) was held on April 2, 2014, at which Plaintiff and a vocational expert testified. (AR at 41-80.) The ALJ issued a written decision on May 27, 2014, finding Plaintiff not disabled under the Social Security Act. (AR 12-24.) This became Defendant's final decision when the Appeals Council denied review. (AR 1-6.)

Plaintiff then commenced this action for judicial review (Doc. 1.) After receipt of the administrative record (Doc. 12), the parties briefed the issues for review (Docs. 15, 19, 22). For reasons stated below, Defendant's decision is reversed and the case remanded for an award of benefits.

**STANDARD OF REVIEW**

The district court reviews only those issues raised by the party challenging the Commissioner's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may reverse the decision only where it is based on legal error or not supported by substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The court's review is limited solely to "the reasons provided by the ALJ in the disability determination[.]" *Id.*

**DISCUSSION**

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she is not currently working, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing past work. If the claimant meets her burden, the Commissioner must show at step five that the claimant is able to perform other work. 20 C.F.R. §§ 404.1520, 416.920(a)(4)(i)-(v).

Plaintiff has met her burden at steps one and two because she has not worked since before the alleged date of disability and has the following severe impairments: cervical degenerative disc disease, status post laminectomy and suboccipital craniotomy, rheumatoid arthritis, osteoarthritis, obesity, and hypertension. (AR 16.) The ALJ found at step three that the impairments do not meet or equal a listed impairment. (AR 16-17.)

The ALJ then determined that Plaintiff has the RFC to perform sedentary work with the following abilities and limitations: lifting and carrying less than 10 pounds frequently and 20 pounds occasionally; unlimited sitting, standing and walking, frequent stooping and crouching, occasional kneeling and climbing ramps and stairs, but no crawling or climbing ladders; frequent reaching except for overhead, and frequent handling, fingering, and feeling. (AR 17-23.) Based on this RFC and the testimony of the vocational expert, the ALJ determined at step four that Plaintiff is not disabled because she can perform her past work as an administrative assistant, accounting clerk, and customer service representative. (AR 23-24.)

Plaintiff challenges the RFC and step four determinations. Plaintiff argues that the ALJ improperly weighed medical opinions, particularly with respect to her arthritis and headaches. (Docs. 15 at 7-17, 22 at 1-8.) Plaintiff further argues that the ALJ erred in rejecting her testimony about her symptoms and limitations. (*Id.* at 17-20, 8-11.)

Defendant counters that the ALJ properly resolved conflicts in the medical opinions based on substantial evidence (Doc. 19 at 6-14), and provided sufficient reasons for discrediting Plaintiff's testimony (*id.* at 15-20). The parties disagree as to whether any remand should be for an award of benefits or further proceedings. (Docs. 15 at 21-22, 19 at 20-21.)

The Court agrees with Plaintiff that the ALJ erred in weighing medical opinions and discrediting her testimony. The ALJ's decision therefore must be reversed and, for reasons stated below, remanded for an award of benefits.

**I. The ALJ Improperly Weighed Medical Opinions.**

Dr. Richard Kelly has treated Plaintiff since 1990. He completed an RFC questionnaire indicating that Plaintiff suffers from daily neck pain and headaches, pain in her hands due to rheumatoid arthritis, and chronic fatigue. (AR 400.) He opined that due to these impairments, Plaintiff has significant limitations in reaching, handling, and fingering, would need frequent and lengthy breaks during the workday, would miss work more than four times a month, and otherwise is not physically capable of working eight

hours a day, five days a week on a sustained basis. (AR 400-01.) In a separate migraine headache questionnaire, Dr. Kelly opined that Plaintiff experiences throbbing headaches in the back of her head and neck and the headaches interfere with her ability to work. (AR 403.)

Despite the fact that Dr. Kelly had been treating Plaintiff for more than 20 years, the ALJ gave his opinion no weight. (AR 22.) This constitutes legal error, Plaintiff argues, because the ALJ failed to provide sufficient reasons for rejecting the opinion. The Court agrees.

**A.  Standard for Weighing Medical Opinions**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and is not bound by a physician's ultimate conclusion that the claimant is "unable to work" or "disabled." 20 C.F.R. §§ 404.1527, 416.927(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, the claimant's physical or mental limitations, and what the claimant can still do despite the impairments and limitations. 20 C.F.R. §§ 404.1527, 416.927(a)(2).

The regulations make clear that opinions of treating doctors generally should be given more weight than the opinions of other doctors. *Id.*, §§ 404.1527, 416.927(c)(2). "If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). To meet this requirement, the ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

**B.  The ALJ Erred in Rejecting the Treating Physician's Opinion**

In this case, the ALJ impermissibly rejected Dr. Kelly's opinion in conclusory fashion. He gave the opinion no weight because it purportedly is "inconsistent with the greater objective medical record." (AR 22.) This conclusory assertion falls far short of

the standard required for rejecting the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527, 416.927; *Cotton*, 799 F.2d at 1408. The law is clear that the ALJ must do more than offer his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ did not satisfy this burden in concluding, without explanation, that Dr. Kelly's opinion is inconsistent with the "greater objective medical record." (AR 22.)

The ALJ further concluded that Dr. Kelly's opinion was "inconsistent with other treatment records" (AR 22), but he does not explain why this is so. The "other treatment records" span more than 100 pages. (*Id.*, citing Exs. 6F, 9F, 19F, & 24F.) In rejecting Dr. Kelly's opinion, however, the ALJ failed to cite to a single individual record that is inconsistent with the opinion. (*Id.*)

The ALJ noted that Dr. Kelly contradicted himself by indicating that Plaintiff can walk eight blocks without rest but can stand and walk less than one hour in a normal workday. (AR 22.) Dr. Kelly clarified, however, that Plaintiff can stand and walk for only fifteen minutes at a time. (AR 400.) Moreover, the apparent contradiction does not relate to the most relevant impairments and limitations, namely, Plaintiff's headaches and arthritis, and her limited ability to handle, finger, and feel things and maintain a regular work schedule on a sustained basis. In short, the ALJ failed to explain how any contradiction regarding Plaintiff's ability to walk renders the rest of Dr. Kelly's opinion worthy of no deference.

Under Social Security Ruling (SSR) 96-2p, which provides guidance for the weighing of medical opinions, a treating physician's opinion is still entitled to some deference and must be given appropriate weight even where it is not supported by clinical findings and is inconsistent with other evidence. SSR 96-2p, 1996 WL 362211 (July 2, 1996). The ruling provides, in pertinent part:

> [ALJ's] must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and

>laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," *not that the opinion should be rejected*. Treating source medical opinions are still entitled to deference and *must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.*

*Id.* at *4 (emphasis added). "These factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician, [and] the 'nature and extent of the treatment relationship' between the patient and the treating physician[.]" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing 20 C.F.R. §§ 404.1527, 416.927(c)(2)(i)-(ii)).

As noted above, Dr. Kelly has been treating Plaintiff for more than 20 years. (AR 400.) This longtime treating relationship "provides a 'unique perspective' on [Plaintiff's] condition," and the nature and extent of the relationship "adds significant weight to [Dr. Kelly's] opinions." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (quoting § 404.1527(c)(2)(i)-(ii)). Similarly, the "subjective judgments of [Dr. Kelly] are important, and properly play a part in [his] medical evaluations." *Embrey*, 849 F.2d at 422. The ALJ's decision to reject Dr. Kelly's opinion without giving due weight to the length and nature of the treating relationship and his subjective judgments about Plaintiff's impairments constitutes legal error. *See id.* at 633-35.

With respect to the migraine headache questionnaire (AR 403), the ALJ gave it "little or no weight" because it purportedly shows that Plaintiff's headaches "are under control with medication and are not disabling" (AR 22). Dr. Kelly indicated that Plaintiff took Tramadol and her response to the medication was good, but he immediately thereafter opined that the migraine headaches would still interfere with her ability to work and cause her to miss work more than one day a week. (AR 403.) Given this specific opinion as to the limiting effects of the headaches, after noting that Plaintiff took Tramadol for them, the ALJ's conclusion that the headaches were "under control with medication" is a mischaracterization of the evidence.

For reasons discussed above, the also ALJ erred in rejecting Dr. Kelly's opinion

- 6 -

about the headaches based on the "greater objective record" without citing to, or discussing, specific medical evidence. *See Cotton*, 799 F.2d at 1408; *Embrey*, 849 F.2d at 421-22. Similarly, the fact that Plaintiff received no emergency room treatment for the headaches is not a sufficient reason for giving little or no weight to Dr. Kelly's opinion. Neither hospitalization nor emergency room treatment is necessary to render an impairment disabling, and Defendant cites no authority to the contrary. *See Perry v. Astrue*, No. 07cv276 L(JMA), 2009 WL 435123, at *13 (S.D. Cal. Feb. 19, 2009).

The ALJ noted that Dr. Kelly is a primary care physician and not a rheumatologist or other specialist. (AR 22.) Although more weight generally is to be given to the opinion of a specialist, *see* §§ 404.1527, 404.927(c)(5), this does not mean that the primary care physician's opinion should be given no weight. *See Perry v. Astrue*, No. 2:11-cv-3121-KJN, 2012 WL 6555074, at *4 (E.D. Cal. Dec. 14, 2012) (noting that the opinion of a primary care physician about the claimant's mental impairments could not be rejected solely because the physician was not a psychologist or psychiatrist).

The Court finds that the ALJ offered nothing more than unsupported conclusions in rejecting Dr. Kelly's opinion, and only referred generally to its purported contradiction with other evidence in the record rather than identifying and interpreting the alleged contradictory evidence. "This is not sufficient to meet the standard required by the Ninth Circuit." *Smith v. Colvin*, No. CV-13-00507-PHX-DGC, 2014 WL 359074, at *2 (Feb. 3, 2014). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

**C. The ALJ Erred in Adopting the Opinion of the Examining Physician**

Plaintiff was examined once by Dr. Keith Cunningham, a physician with the Arizona Disability Determination Services. Dr. Cunningham completed an assessment form opining that Plaintiff can lift and carry less than 10 pounds frequently and 20 pounds occasionally, can frequently stoop and crouch and occasionally kneel and climb, can sit, stand, and walk without limitation, and can frequently handle, finger, and feel

things.  (AR 434-40.)   The ALJ gave this opinion "significant weight" and used it as the basis for his RFC determination.  (AR 17-18, 23.)

Plaintiff argues, correctly, that the ALJ erred in adopting the opinion of Dr. Cunningham over that of the treating physician, Dr. Kelly.  (Doc. 15 at 13-14.)  An ALJ may disregard a treating physician's opinion in favor of one from an examining doctor if he provides valid reasons for doing so.  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretations thereof, and making findings."  *Cotton*, 799 F.2d at 1408.  "But any such detailed summary and analysis is conspicuously missing here."  *Birkenstein v. Colvin*, No. CV-12-1525-SP, 2013 WL 3870298, at *6 (C.D. Cal. July 25, 2013).

The ALJ gave significant weight to Dr. Cunningham's opinion based on the "objective nature" of his exam and "consistency with the greater objective record." (AR 23.)   The ALJ, however, does not explain what specific evidence the opinion is consistent with or why the exam was more objective than exams performed by Dr. Kelly. Interestingly, although Dr. Cunningham – like Dr. Kelly – is not rheumatologist, the ALJ did not discount his opinion for being less "qualified to assess the functional effects of [Plaintiff's] arthritis."  (AR 22.)  The Court finds that the ALJ erred in giving significant weight to Dr. Cunningham's opinion without providing the requisite detailed discussion and analysis. *See Cotton*, 799 F.2d at 1408.

### D.     The ALJ Erred in Giving Weight to the Opinions of Non-Examiners

"The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'"  *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1201-02 (9th Cir.2008) (quoting 20 C.F.R. § 404.1527(c)(3)).   In this case, ALJ gave partial weight to the opinions of non-examining state agency physicians on the ground that their opinions "were not inconsistent with the greater objective medical record[.]"  (AR 23.)   But to the extent this is a legitimate basis for accepting the opinions over that of the treating physician, the ALJ still fails to explain the purported lack of inconsistency.

Moreover, the non-examining physicians' opinions are conclusory and therefore not worthy of credence.  The doctors gave "lesser or no weight" to Dr. Kelly's opinion because "the totality of the circumstances does not support the opinion" and it purportedly "contains inconsistencies" and "contrasts sharply with the other evidence in the record[.]"  (AR 100, 103, 132, 136.)  But the evidence and circumstances that purportedly render Dr. Kelly's opinion meritless are not discussed and interpreted by the non-examining physicians.  The ALJ's conclusory reliance on opinions that are themselves conclusory constitutes clear legal error.

### E.  Defendant's Arguments

Defendant cites to specific record evidence in arguing that Dr. Kelly's opinion is not supported by the record as a whole.  (Doc. 19 at 8-10.)   But the ALJ did not rely on this specific evidence in support of his conclusion or otherwise state that the evidence rendered Dr. Kelly's opinion worthy of no weight.

The Court "is powerless to affirm the [ALJ's decision] by substituting what it considers to be a more adequate or proper basis."  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  Indeed, this Circuit has made clear that reviewing courts are "constrained to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  It would be improper for the Court to affirm the ALJ's decision "based on evidence that the ALJ did not discuss."  *Id.*; *see Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (same); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) ("[I]f the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline.").

Where an ALJ explains a finding with less than ideal clarity, Defendant contends, "reviewing courts must uphold it if the ALJ's path 'may reasonably be discerned.'" (Doc. 19 at 11 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).)  The problem here, however, is that the ALJ did not sufficiently explain his conclusions for the Court to be able to reasonably discern the basis for them.  The Court cannot "be expected

to chisel that which must be precise from what the [ALJ] has left vague[.]" *SEC*, 332 U.S. at 197.

Defendant further contends that the medical records Plaintiff relies on do not render the ALJ's conclusions "irrational." (Doc. 19 at 10.) But this is not the standard. Plaintiff need not show that the ALJ's conclusions are irrational. Rather, the ALJ must affirmatively set forth specific and legitimate reasons for rejecting or accepting medical opinions, and those reasons must be supported by substantial evidence. *See Cotton*, 799 F.2d at 1408. The ALJ's decision fails to meet this standard.

### F. Medical Opinion Summary

In interpreting the rules and regulations for the weighing of medical opinions, this Circuit made clear more than 30 years ago that an ALJ may disregard the opinion of a treating physician only by providing specific and legitimate reasons supported by substantial evidence. *Murray*, 722 F.2d at 502. Conclusory statements are not enough. Instead, the ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, *stating his interpretation thereof, and making findings*." *Cotton*, 799 F.2d at 1408 (emphasis added). This requirement has been affirmed many times over the past few decades.[1]

Although the ALJ recounted much of the medical evidence (AR 19-21), he failed to explain why the evidence supported his conclusion that the treating physician's opinion should be given no weight. Similarly, the ALJ did not explain what specific evidence supported his decision to give significant weight to the examining physician's opinion and partial weight to those of the non-examining doctors. In short, the ALJ erred in failing to weigh all relevant factors and rejecting the treating physician's opinion

---

[1] *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

without adequate explanation supported by substantial evidence. *See Burrell*, 775 F.3d at 1140 (ALJ erred in rejecting treating physician's opinion and adopting the consensus view where the ALJ failed to give specific and legitimate reasons for the rejection); *Embrey*, 849 F.2d at 421-22 (noting that it is not enough for the ALJ to simply recount the medical evidence in seriatim fashion and then reach unexplained conclusions).

**II. The ALJ Erred in Discrediting Plaintiff's Symptom Testimony**

The ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or other symptoms is credible. The ALJ first determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. If the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Plaintiff testified that because of her arthritis, she has swelling in her hands, little feeling in her fingertips, severe pain in her hands and wrists throughout the day even with medication, and much difficulty holding and gripping things. (AR 55-57, 60.) Various forms of therapy, including hot wax and cold mittens, provide temporary relief when her hands are really bad, but she was not able to continue out-patient therapy due to difficulty driving and other transportation problems. (AR 58-59.) The arthritis in her back limits her to sitting 30-45 minutes, standing 10-15 minutes, and walking 5 minutes at a time. (AR 60-61.) She still experiences pain after her neck and head surgery, and has difficulty with overhead reaching. (AR 59.) Since the surgery, she has had difficulty sleeping in her normal position and her hands and wrists begin to feel like bricks during the night. (AR 61-62.) She often takes a one to two hour nap during the day. (AR 62.) On a scale of one to ten, her pain level on a good morning is three but during the course of the day it often goes as high as seven. (AR 64.)

There is no dispute that Plaintiff suffers from rheumatoid arthritis, osteoarthritis, cervical degenerative disc disease, obesity, and hypertension. (AR 16.) Plaintiff underwent cervical laminectomy and suboccipital craniotomy surgery in June 2011 to help relieve compression on her spinal cord. (AR 321.) The ALJ found that Plaintiff's impairments reasonably could be expected to cause her alleged symptoms, but nonetheless concluded that her symptom testimony was not entirely credible. (AR 19.)

Because the ALJ made no finding of malingering, he was required to give clear and convincing reasons for his adverse credibility finding. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). For reasons explained below, the ALJ has not met this high burden.

The ALJ found Plaintiff to be more active than she claimed, asserting several reasons for this finding. (AR 19.) None has merit.

The ALJ first noted that a treatment record (AR 569), indicates Plaintiff was looking for work in September 2010 (AR 19, 569). But this job search occurred more than three years before the hearing, and even then Plaintiff complained that it was painful to hold or open things like a bottle of water, that she often drops things, that her hand pain had worsened over the past six months, and sometimes her "hands feel like cement." (AR 569.) The ALJ ignored these complaints and instead selectively picked the statement that Plaintiff was looking for work.

ALJs, however, "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwick v. Colvin*, No. 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)); *see Garrison*, 759 F.3d at 1017 & n.23 (noting that ALJs may not cherry-pick from mixed results). Moreover, the fact that Plaintiff unsuccessfully sought to return to work despite her impairments is "not, by itself, a clear and convincing reason for discounting her testimony." *Quarles v. Astrue*, No. CV-09-01015-PHX-ROS, 2010

WL 3614654, at *5 (D. Ariz. Sept. 10, 2010); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) ("That Lingenfelter, after the relevant time period during which he claimed to be disabled and facing difficult economic circumstances, tried to work for nine weeks and, because of his impairments, failed, is not a clear and convincing reason for [the adverse credibility determination].").

The ALJ also stated that Plaintiff shops, cooks, and drives independently. (AR 19.) An ALJ "may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 & n.7. Here, the ALJ did not address the limited nature of Plaintiff's daily activities or determine whether such activities were transferable to the work place. Moreover, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated her symptoms." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff testified that because her hands "like to be straight [and] don't like to curl," she has trouble gripping the steering wheel and "can't drive for any long period." (AR 56.) She explained that although she can go up the street to the Fry's grocery store to "pick up a couple things, that is it" because she "can't go and get a week's worth of groceries." (*Id.*) With respect to cooking, Plaintiff stated that she can scramble eggs and also makes a lot of sandwiches, in part because they are not too hard to clean up when she drops them. (AR 56-57.) She has trouble lifting even a half-gallon of milk and uses scissors to open things. (AR 55.) Plaintiff also made clear that her "son does some of the cooking" and will "bring over meals occasionally." (AR 57.)

The ALJ ignored these limitations in finding that Plaintiff's ability to "shop, cook, and drive" renders her symptom testimony not credible. (AR 19.) Moreover, this Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly

1 incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Reddick*, 157 F.3d at 722.

The ALJ also found Plaintiff's symptom testimony not credible because she reported being her mother's caregiver and sometimes helping her mother get up and move around. (AR 19.) Plaintiff denied being her mother's caregiver, stating that she did not know why this is reflected in the treatment note. (AR 64-65, 68.) But even if this were an accurate reflection, the treatment note otherwise supports Plaintiff's hearing testimony about her pain and other symptoms. The treatment note, dated March 22, 2012, shows that Plaintiff presented with complaints of hand swelling and pain that began two years earlier. (AR 523.) She reported limitations including trouble driving and gripping the steering wheel, problems opening things without the use of scissors, and difficulty performing tasks like typing or using a computer. (*Id.*) She also stated that her pain level was at three in the morning and could increase to seven depending on her activity level. (AR 523-24.)

These reports of pain and limitations are entirely consistent with Plaintiff's hearing testimony. (AR 55-64.) The ALJ selectively focused on one statement – that Plaintiff was her mother's caregiver – and ignored the rest. Moreover, the treatment note itself makes clear that when Plaintiff did help her mother get up, "she has more pain." (AR 523; *see* AR 543 ("more sore" when she helps her mother.)

Finally, the ALJ found the symptom testimony not credible because Plaintiff "reported an exercise routine consisting of swimming 3-4 times per week." (AR 19.) The ALJ specifically inquired about this activity at the hearing, and Plaintiff made clear that she merely walked in the pool rather than swimming laps (AR 65):

Q. Now, the notes, there's notes that said you swim three to four times a week?

A. Yeah. I like to swim in the summer, it really helps. It's not a heated pool but I try and get as much out of the season as I can.

Q. Okay. Now, when you say swim, some people say swim and it means just

getting in the water, floating around.  Other people swim [and it] means you're actually taking strokes and swimming.  What, how are you defining swimming?

      A.  Walking.

      Q.  Okay.

      A.  I walk in the pool.

      Q.  Okay.  So you're not swimming laps, overhead strokes, that type of thing?

      A.  No.  I go down and I walk back and forth in the pool.

Despite this colloquy, the ALJ found Plaintiff's symptom testimony not credible because she could "swim."  (AR 19.)  This reason clearly is not convincing, nor is it supported by the record.

      The ALJ summarized numerous treatment records and exam results (AR 19-20), but gave no reasons – let alone clear and convincing ones – as to why they support his adverse credibility finding.  Moreover, "[o]nce a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see* 20 C.F.R. §§ 404.1529, 416.929(c)(2).  Here, the ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  (AR 19.)  His recounting of the medical evidence therefore does not support an adverse credibility finding.

      The ALJ also erred in failing to cite to the specific testimony he found not credible.  (AR 19.)  "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995)).

      Defendant acknowledges that Plaintiff's activities do not demonstrate an ability to work, but argues that the purported inconsistencies between her testimony and claimed limitations support the ALJ's adverse credibility finding.  (Doc. 19 at 18.)  As explained

above, however, there is no material inconsistency when the testimony is viewed as a whole and in the proper context. In addition to her testimony that she has difficulty shopping, cooking, and driving due pain and other symptoms, Plaintiff also explained that she has trouble doing housework and cannot vacuum or mop, and uses "little tricks" to dress herself but does not wear anything with buttons or zippers due to the swelling and loss of feeling in her hands and fingers. (AR 55-56.) On the whole, Plaintiff's testimony about her daily activities is not inconsistent with her alleged disabling impairments.

Defendant's reliance on *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), is misplaced. (Doc. 19 at 18.) The claimant in that case alleged a complete inability to tolerate even minimal human contact without suffering from debilitating panic attacks, but yet her daily activities included walking her grandchildren to and from school, taking walks, attending church, and shopping. 674 F.3d at 1113. Given the clear disconnect between the alleged disability and daily activities, ALJ did not error in discrediting the claimant's testimony to the extent it contradicted claims of a totally debilitating impairment. *Id.*

In summary, the record shows that Plaintiff's daily activities are quite limited and carried out with much difficulty, and the medical evidence is not clearly inconsistent with Plaintiff's complaints of pain. Considering the record as a whole and in the proper context, the Court concludes that the ALJ failed to provide clear and convincing reasons for finding Plaintiff's symptom testimony not credible. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

### **REMAND**

Having decided to reverse Defendant's decision, the Court has discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited as true and the case remanded for an award of benefits when the following three conditions are met: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d at 1292; *see Varney v. Sec. of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Hammock v. Bowen,* 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney's* "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

The Court has found that the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony concerning her symptoms and limitations. The Court has further found that the ALJ erred in rejecting the opinion of Dr. Kelly, one of Plaintiff's treating physicians. The uncontroverted testimony of the vocational expert makes clear that if Plaintiff had the limitations opined to by Dr. Kelly (AR 400-01), which are consistent with Plaintiff's own testimony, the ALJ would be required to find Plaintiff incapable of past or other full time work and therefore disabled (AR 71-79). Thus, crediting Dr. Kelly's opinion as true, as the Court must under Ninth Circuit law, "it is clear from the record that the ALJ would be required to find [Plaintiff] disabled[.]" *Benecke*, 379 F.3d at 593. Because the record in this case has been fully developed and further proceedings would serve no useful purpose, remand for an award of benefits is appropriate.

Defendant argues that such a remand is unwarranted because "conflicts in the evidence must be resolved based on careful consideration of the entire record[.]" (Doc. 19 at 21.) But Defendant had ample opportunity during the administrative proceedings below to carefully review the record and resolve conflicts. This Circuit's "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose[.]'" *Garrison*, 759 F.3d at 1021. Allowing the ALJ "to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 593. Defendant, "having lost this appeal, should not

have another opportunity . . . any more than [Plaintiff], had [she] lost, should have an opportunity for remand and further proceedings to establish [disability]." *Moisa*, 367 F.3d at 887.

Moreover, it already has been more than four years since Plaintiff applied for benefits. (AR 205-15.) Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Varney*, 859 F.2d at 1398. Because it is clear from the record that the ALJ would be required to find Plaintiff disabled, further delay in the issuance of benefits is unwarranted.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for an award of benefits. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 9th day of February, 2017.

Douglas L. Rayes
United States District Judge